UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN L. LOPEZ, SR.,

       Plaintiff,                                      Hon. Paul L. Maloney

v.                                                          Case No. 1:08-CV-22

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/


**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for the awarding of benefits**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 53 years of age at the time of the ALJ's decision. (Tr. 22, 51). He completed the eighth grade and worked previously as a landscaper, dishwasher, farm worker, and janitor. (Tr. 57-58, 79, 87, 104-06, 119).

Plaintiff applied for benefits on April 15, 2004, alleging that he had been disabled since September 15, 2000, due to back pain, arm pain, and shoulder pain.[1] (Tr. 54-56, 78). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-50). On April 24, 2007, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff and vocational expert, Dr. Sandra Donnell. (Tr. 220-64). In a written decision dated July 13, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 15-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

---

[1] Plaintiff previously filed for Supplemental Security Income benefits and Disability Insurance Benefits in 2003. These claims were denied on December 19, 2003, and August 15, 2003, respectively. (Tr. 15, 34, 38-42, 73-74). Plaintiff did not appeal these determinations. The ALJ in the present matter decided that there existed no basis for reopening these determinations. (Tr. 15). Plaintiff has not challenged this conclusion.

Plaintiff's insured status expired on September 30, 2004. (Tr. 15-16); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On October 25, 2003, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 127-30). Plaintiff reported that he was unable to work due to low back pain which he has experienced since "the early 90's." (Tr. 127). He also reported that he had previously fractured his left clavicle. (Tr. 127). Plaintiff reported that he performs "light household chores" and was recently able to paint his apartment. (Tr. 128). Plaintiff reported that he last worked for the State of Michigan doing "grounds work." (Tr. 128).

The results of a physical examination were unremarkable. (Tr. 128). Straight leg raising was negative and Plaintiff exhibited no motor or sensory deficiencies. (Tr. 128). Babinski testing[2] was negative and Plaintiff was able to "step climb, heel and toe walk and full squat without assistance." (Tr. 129). Plaintiff exhibited "normal" range of motion throughout his lumbosacral and cervical spine. (Tr. 129). He was also able to perform all requested orthopedic maneuvers "without modification or assistance." (Tr. 129).

X-rays of Plaintiff's left clavicle, taken on November 2, 2003, revealed evidence of an "old" fracture. (Tr. 168). X-rays of Plaintiff's spine, taken on February 9, 2004, revealed a

---

[2] Babinski testing is designed to discern the presence of neurological damage in the brain and/or spinal cord. A positive Babinski reflex "indicates damage to the nerve paths connecting the spinal cord and the brain." *See* Babinski's Reflex, available at http://www.nlm.nih.gov/medlineplus/ency/article/003294.htm (last visited on December 30, 2008).

"compression deformity of T12, likely related to previous injury," as well as "mild degenerative changes." (Tr. 167).

On August 28, 2004, Plaintiff was again examined by Dr. Kountanis. (Tr. 139-42). Plaintiff reported that he was experiencing low back pain, but that he is "able to do activities" when he takes his medication. (Tr. 139). Plaintiff exhibited "normal" range of motion throughout his shoulders and lumbosacral spine. (Tr. 141). Straight leg raising was negative and Plaintiff exhibited no motor or sensory deficiencies. (Tr. 140). Babinski testing was negative and Plaintiff was able to "step climb, heel and toe walk and full squat without assistance." (Tr. 141). Plaintiff was diagnosed with arthralgias of the spine and left shoulder. (Tr. 141). Dr. Kountanis also observed that Plaintiff is "illiterate in Spanish and English." (Tr. 140).

On September 28, 2006, Plaintiff was examined by Dr. Shannon Wiggins. (Tr. 195-97). Plaintiff reported that he was experiencing back pain. (Tr. 195). The results of a physical examination were unremarkable. (Tr. 196). Plaintiff was prescribed pain medication. (Tr. 197). The results of a November 9, 2006 examination likewise revealed no evidence of abnormality or deficit. (Tr. 189-91).

On January 23, 2007, Plaintiff was examined by Dr. Wiggins. (Tr. 183-85). Plaintiff reported that he recently fell on the ice and was experiencing back pain. (Tr. 183). The doctor observed that Plaintiff was "having a lot of spasms in the lower back." (Tr. 184). Plaintiff was instructed to use ice and take pain medication. (Tr. 185). A February 23, 2007 examination revealed that Plaintiff was experiencing "tenderness" and "restricted range of motion" in his lumbar spine. (Tr. 181).

### ANALYSIS OF THE ALJ'S DECISION

A. **Applicable Standards**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from (1) degenerative disc disease of the lumbar spine; (2) coronary artery disease; (3) hypertension; (4) asthma/chronic obstructive pulmonary disease; and (5) status post left collarbone fracture. (Tr. 17). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 21-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date his insured status expired, Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he can stand and walk for 4 hours during an 8-hour workday; (3) he can sit for 6 hours during an 8-hour workday; (4) he must be able to sit or stand at will; (5) he can never climb ladders, ropes, or

scaffolds; (6) he can occasionally balance, stoop, crouch, kneel, crawl, squat, or climb ramps/stairs; (7) he can occasionally bend, twist, or turn at the waist; (8) he can perform frequent handling activities with his left hand; and (9) he must avoid concentrated exposure to humidity, fumes, odors, dust, gases, and respiratory irritants. (Tr. 19). In short, the ALJ found that Plaintiff can perform a limited range of light work. *See* 20 C.F.R. § 404.1567. Plaintiff has not challenged this aspect of the ALJ's determination. Moreover, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Dr. Sandra Donnell.

The vocational expert testified that there existed approximately 5,900 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 258-60). Specifically, the vocational expert testified that there existed 1,900

parking lot attendant jobs and 4,000 mail clerks jobs in the state of Michigan. (Tr. 258-60). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). The ALJ concluded, therefore, that Plaintiff was not disabled as defined by the Social Security Act.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. The Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, section 200.00(a). In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998).

Plaintiff was 50 years of age at the time his insured status expired,[4] thus a person "closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). The ALJ found that Plaintiff's "past relevant work is unskilled." (Tr. 21). With respect to Plaintiff's RFC, the ALJ found that Plaintiff was limited to the performance of light work. Given the ALJ's findings with respect to these particular factors, whether Plaintiff was deemed disabled pursuant to the grids depended on the ALJ's finding regarding Plaintiff's educational level.

---

[4] The ALJ erroneously found that Plaintiff was 51 years of age on the date Plaintiff's insured status expired. (Tr. 21).

If Plaintiff was deemed "illiterate or unable to communicate in English," the grids would mandate a finding of disabled. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 202.09. However, if Plaintiff were found to possess "limited or less" education, the grids would support a finding of not disabled. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 202.10. The ALJ found that Plaintiff "has a limited education and is able to communicate in English." (Tr. 21). The ALJ concluded, therefore, that pursuant to Rule 202.10,[5] the grids did not mandate a finding that Plaintiff was disabled. (Tr. 22). Plaintiff asserts that the ALJ's determination that he is not illiterate is not supported by substantial evidence. The Court agrees.

The relevant Social Security regulations define "limited education" as possessing an "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). These regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 404.1564(b)(1). An individual is considered illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* As has been recognized, "only literacy in English is considered, since literacy in other languages has little effect on the number of jobs in the national economy available to the claimant." *Chavez v. Dep't of Health and Human Services*, 103 F.3d 849, 852 (9th Cir. 1996).

Plaintiff testified at the administrative hearing that he stopped attending school after the eighth grade and that he was unable to read anything. (Tr. 231, 254-55). Plaintiff testified that

---

[5] The Court notes that the ALJ also made reference to Rule 202.11 in his decision, finding that this Rule likewise did not mandate a finding that Plaintiff was disabled. (Tr. 22). To the extent that the ALJ relied on this particular Rule, however, his decision is in error. Rule 202.11 applies where a claimant's past relevant work is characterized as "skilled or semiskilled." As previously noted, however, the ALJ expressly found that Plaintiff's past relevant work was "unskilled."

10

he had to obtain assistance completing the various disability forms. (Tr. 228). In a disability report dated August 18, 2003, Plaintiff reported that he was unable to read English or "write more than [his] name in English." (Tr. 112). Plaintiff reiterated this assertion in a separate (undated) disability report. (Tr. 77). On April 16, 2004, G. Bonilla, an employee of the Social Security Administration, interviewed Plaintiff and reported that Plaintiff "is not able to read." (Tr. 74-75). Bonilla reported that she "read the app[lication] to [Plaintiff] before having him sign." (Tr. 75). On August 28, 2004, Dr. Kountanis, after examining Plaintiff, concluded that Plaintiff is "illiterate in Spanish and English." (Tr. 140).

The ALJ rejected this evidence, concluding that Plaintiff's allegations of illiteracy "are not documented in the medical evidence record and are supported only by the testimony of the claimant." (Tr. 20). As noted immediately above, this is inaccurate. Dr. Kountanis reported that Plaintiff is illiterate. Moreover, an official with the Social Security Administration also reported that Plaintiff "is not able to read." Thus, the ALJ's contention that Plaintiff's claim of illiteracy is "supported only by the testimony of the claimant" is inaccurate. Furthermore, the ALJ identified no valid or accurate rationale for discounting Plaintiff's testimony that he is unable to read.

The ALJ further erred when he concluded that even if Plaintiff is "unable to read or make change," such "would not preclude the types of jobs cited by the vocational expert." (Tr. 20). As indicated above, the vocational expert testified that there existed 1,900 parking lot attendant jobs and 4,000 mail clerks jobs which an individual with Plaintiff's RFC could perform. (Tr. 258-60). The vocational expert also testified, however, that the mail clerk position required the ability to "read or alphabetize" and that the parking lot attendant position required the ability to read and make change. (Tr. 262-63).

11

The ALJ's conclusion that Plaintiff possesses a "limited education" is not supported by substantial evidence. Instead, the record clearly compels the conclusion that Plaintiff is illiterate. Moreover, the ALJ's reliance on the vocational expert's testimony in support of the conclusion that there exists a substantial number of jobs which Plaintiff can perform despite his impairments, is likewise not supported by substantial evidence given the vocational expert's testimony that *all* the jobs he identified required the ability to read.

While the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling). As discussed above, the Court finds that the evidence of Plaintiff's illiteracy is more than substantial. The vocational expert testified that absent the ability to read there existed no jobs which Plaintiff could perform consistent with his limitations. Furthermore, the grids, as discussed above, mandate a finding that Plaintiff is disabled in this matter. The Court finds that this constitutes compelling evidence of Plaintiff's disability.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. The Court further finds that the evidence of Plaintiff's disability is compelling. Accordingly, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for the awarding of benefits**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  January 14, 2009

  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge